**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAWSAN JABER, | ) | |
| | ) | |
| Plaintiff, | ) | Case: 1:25-cv-10422 |
| | ) | |
| v. | ) | |
| | ) | |
| MAINE TOWNSHIP HIGH SCHOOL | ) | |
| DISTRICT 207, | ) | |
| | ) | Jury Trial Demanded |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, Sawsan Jaber ("Plaintiff"), by and through the undersigned counsel, hereby files this First Amended Complaint against Maine Township High School District 207 ("Defendant"), and in support states as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII"), and the Illinois Human Rights Act (775 ILCS 5/) ("IHRA") seeking redress for Defendant's race-based discrimination, national-origin based discrimination, religion-based discrimination, sex-based discrimination, race-based harassment, national-origin-based harassment, religion-based harassment, sex-based harassment, and retaliation under Title VII and the IHRA.

2. This lawsuit further arises under the Illinois Human Rights Act (775 ILCS 5/) ("IHRA") seeking redress for Defendant's familial responsibilities-based discrimination, familial responsibilities-based harassment, marital status-based discrimination, and marital status-based harassment under the IHRA.

3.     This lawsuit further arises under the Illinois Slander and Libel Act (740 ILCS 145/0.01), seeking redress for Defendant's defamation of Plaintiff's character.

4.     This lawsuit further arises under Illinois Common Law seeking redress for Defendant's retaliation of Plaintiff's employment against public policy.

5.     This lawsuit further arises under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA") seeking redress for Defendant's interference with Plaintiff's FMLA rights and retaliation against Plaintiff for utilizing FMLA benefits.

## JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 as Title VII, Section 1981, and the FMLA are federal statutes.

7.     Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) as a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this district.

8.     This Court has pendent jurisdiction and supplementary jurisdiction of Count XV through Count XXXV through 28 U.S.C. §1367.

## ADMINISTRATIVE PREREQUISITES

9.     All conditions precedent to jurisdiction have been satisfied.

10.     Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights (attached hereto as Exhibit "A").

11.     Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

12.     This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the

EEOC's Dismissal and Notice of Right to Sue.

13.     Additionally, Plaintiff received the Notice of Opt Out of the Investigative and Administrative Process from the Illinois Department of Human Rights ("IHRA") (Attached hereto as Exhibit "C").

14.     Plaintiff filed a second charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Illinois Department of Human Rights (attached hereto as Exhibit "D").

15.     Plaintiff received a second Notice of Right to Sue from the EEOC (attached hereto as Exhibit "E").

16.     This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

17.     Additionally, Plaintiff received the Notice of Opt Out of the Investigative and Administrative Process from the Illinois Department of Human Rights ("IHRA") (Attached hereto as Exhibit "F").

## THE PARTIES

18.     Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Orland Park, Illinois.

19.     Defendant is an entity that specializes in providing comprehensive learning facilities.

20.     At all times material to the allegations in this Complaint, Defendant, Maine Township High School District 207, is an entity doing business in and for Cook County whose address is 1177 South Dee Road, Parkridge, Illinois 60068.

21.     Plaintiff was employed by Defendant as an "employee" within the meaning of 42

3

U.S.C §2000e(f).

22.     During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. §2000e(b).

## BACKGROUND FACTS

23.     Plaintiff was hired by Defendant on or about May 2, 2023, as the English Department Chair at Maine West High School until her unlawful termination in or June 6, 2025.

24.     Plaintiff met or exceeded Defendant's performance expectations during the entire duration of her employment despite false accusations and pretextual reasons for Plaintiff's termination.

25.     Plaintiff is a member of a protected class or classes because of her race (Middle Eastern), national origin (Palestinian), and religion (veiled *hijabi* Muslim).

26.     Plaintiff is a follower, member, or practitioner of the Muslim faith, Islam.

27.     Plaintiff's religious beliefs are sincerely held as seen through her dedicated advocacy.

28.     Plaintiff wears a *hijab*, a headscarf covering the hair that Muslim women adhere to in observation of Islam.

29.     Since at least May 2023 through on or about June 6, 2025, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within her protected class and has been subjected to a hostile work environment on the basis of race, National Origin, and religion violating §1981, Title VII, and the IHRA.

30.     Plaintiff was qualified to serve as English Department Chair.

31.     Over the course of Plaintiff's 26 years of teaching experienced, she has received

several awards regarding her work, including but not limited to:

    a.  Illinois Digital Education Alliance Teacher of the Year 2022;

    b.  International Science and Technology 20 to Watch 2023;

    c.  Center of Educational Leadership (National Educational Leaders In English) Leader of the Year 2023;

    d.   Teacher of the Year 2023 & Best Peer Edited Journal Nationally 2024;

    e.  Cook County Teacher of the Year at state level 2023; and

    f.   nominated Illinois State Teacher of the Year 2024.

32. In or around May 2021, Plaintiff applied for the Assistant Principal for Student Support (APPS) position at Maine East High School.

33. Plaintiff successfully completed all qualifications and interviews, and was selected to enter the final interview round.

34. However, Dr. Mike Pressler, the principal of Maine South High School, informed Plaintiff that she was not selected for the position because Plaintiff was a woman and a single parent, and he believed the after-school demands would be too much for Plaintiff.

35. Dr. Pressler maintained his judgment of Plaintiff's ability to meet the after-school demands despite the fact that Plaintiff's status as a single woman and a mother had not interfered with her job performance or ability to complete her job duties to the expectation of her employer.

36. Dr. Pressler also told others that Plaintiff was not selected because he felt she was unfit to serve the LGBTQIA+ students due to her Muslim identity.

37. This comment directly implicated that Defendant failed to hire Plaintiff on the basis of her sex, familial obligations, and religious identity, despite Plaintiff being qualified for the

role.

38.    Plaintiff firmly maintains that she has never discriminated against any student.

39.    In fact, Plaintiff led curriculum revisions and worked through the District Equity team to ensure literature across all three English departments was inclusive and representative of all students, thereby demonstrating Plaintiff's commitment to inclusion.

40.    In or around May 2023, Plaintiff was hired as the English Department Chair at Maine West High School after being encouraged to apply by three individuals in the district, including Defendant's Principal, Dr. Eileen McMahon.

41.    Even before Plaintiff started in August 2023, Plaintiff learned that a group of internal staff, in collaboration with an outside organization, had been actively making efforts to achieve Plaintiff's contract rescission since the time of her hire.

42.    Teachers in Plaintiff's own department attended to board meetings calling for Plaintiff's termination, falsely accusing Plaintiff of antisemitism simply because of her Palestinian identity.

43.    At this time, Plaintiff had not communicated with, interacted with, or even met most of the employees of Defendant who adamantly publicized false and baseless accusations of antisemitism against her.

44.    The publicity of the defamatory accusation harmed Plaintiff's reputation, despite the accusations being demonstrably false.

45.    The discriminatory and defamatory treatment Plaintiff suffered upon the start of the 2023-2024 school year, and even before, was so severe that Dr. Christina Ramirez, one of Plaintiff's colleagues, was upset by the way Plaintiff was treated and informed, especially by how Dr. Eileen McMahon minimized the attacks and failed to address the discriminatory and

harassing behavior.

46.    Plaintiff later discovered that, between 2022 and 2023, three teachers of color—Nicole Beyers, Aime Perez, and Emily Deleon—left Defendant's English department after suffering similar discriminatory behavior, thereby exhibiting that Defendant had a pattern of discriminatory behavior towards individuals of color.

47.    For example, Ms. Beyers filed a grievance after not being selected for the Department Chair position, and was verbally attacked by Dr. Eileen McMahon during a district equity meeting.

48.    Following the verbal attack, Defendant banned Dr. Eileen McMahon from future equity meetings.

49.    Dr. Eileen McMahon remains the only principal in Defendant's district who is not allowed to attend equity meetings.

50.    Once Plaintiff began working for Defendant, the discrimination and harassment intensified to create a severely hostile work environment.

51.    For example, Plaintiff noticed colleagues physically avoided Plaintiff during meetings and Institute Days, isolating Plaintiff.

52.    In October 2023, administrators began unfairly scrutinizing Plaintiff's social media engagement for so-called antisemitic content—none of which was found.

53.    Individuals outside of Plaintiff's protected classes were not unfairly scrutinized on the basis of their social media content.

54.    Plaintiff was scrutinized for antisemitism due to her identity as a Palestinian woman.

55.    Plaintiff was repeatedly called into meetings with Defendant's administration and

interrogated about her social media posts related to Palestine.

56.    Individuals outside of Plaintiff's protected classes were not interrogated by Defendant's administration on the basis of their social media content.

57.    Defendant's interrogations into Plaintiff's social media posts never resulted in a finding of misconduct against Plaintiff.

58.    By repeatedly summoning Plaintiff into meetings interrogating her about her social posts related to Palestine, Plaintiff was unfairly singled out and repeatedly scrutinized for expressing herself on the subjects of her national origin, race, or perceived religious affiliation, while similarly situated employees outside of her protected classes were not subjected to the same treatment.

59.    Despite no showing of discriminatory behavior by Plaintiff and due to her identity as a Middle Eastern Palestinian Muslim, Dr. Eileen McMahon baselessly questioned Plaintiff's ability to fairly evaluate Jewish colleagues, citing "concerns" from the union even though no evidence existed warranting the same.

60.    Additionally, Plaintiff was criticized for wearing a beanie that depicted a red poppy flower and had the word "Palestine" embroidered onto it by Nicole Avadek, a teacher in Plaintiff's department.

61.    Plaintiff's beanie was labeled inappropriate and offensive, despite no offensive phrasing or depiction on the beanie.

62.    Other cultural expressions by staff were left unchallenged.

63.    Furthermore, Plaintiff was closely monitored and treated with suspicion, even though Plaintiff's performance reviews were consistently positive.

64.    Individuals outside of Plaintiff's protected classes (non-Palestinian, non-Muslim,

and non-Middle Eastern) were not subject to close monitoring and were not treated with suspicion.

65.     When two highly qualified Middle Eastern teachers—Noor Alkhawja and Amira Hattab—were hired through a rigorous process involving over a dozen evaluators, Plaintiff was accused of hiring "your people," despite the fact that Plaintiff was not the final decision-maker in either Middle Eastern teacher's hire and despite the fact that both Middle Eastern teachers had been ranked in the top five candidates based on team evaluations, not just Plaintiff's evaluation.

66.     The reference to Plaintiff hiring "your people" was discriminatory because it attributes the hiring of qualified Arab teachers to Plaintiff's race, national origin, and religion rather than their merit, implying nepotism based on shared background, and undermining the legitimacy of both the new hires and Plaintiff's professional judgment.

67.     In or around February 2024, Dr. Eileen McMahon made the horrifying comment to Plaintiff that, "If you people are free, you would cause another Holocaust."

68.     Dr. Eileen McMahon's comment of "you people" was in reference to Palestinians.

69.     This statement was not only highly offensive, but targeted Plaintiff on the basis of her national origin, race, and religion, perpetuated harmful stereotypes, arbitrarily and unustly associated violence with Plaintiff on the basis of her protected classes, and attributes collective guilt for atrocities Plaintiff did not commit.

70.     That month, Todd Ruder, a teacher in Plaintiff's department, yelled at Plaintiff in a department meeting, lodging the baseless accusation that, "You are hiring your people."

71.     Following this discriminatory remark, Plaintiff engaged in protected activity and reported Todd Ruder's assault on Plaintiff and discriminatory treatment of Plaintiff to Dr. Eileen McMahon and Dr. Jennifer Loika, Associate Principal of Teaching and Learning, thereby

engaging in protected activity.

72.    However, Defendant failed to launch any investigation and/or undertake any remedial measure to address Plaintiff's report of discrimination after Plaintiff's engagement in protected activity, leaving Plaintiff unsupported and allowing a discriminatory and hostile environment to continue against her.

73.    In the face of Defendant's inaction, Plaintiff organized a restorative circle in an attempt to mitigate the discriminatory and hostile environment she suffered from, which was undermined when Plaintiff's team stayed silent and refused to engage in the restorative circle.

74.    In or around August 2024, when Noor Alkhawja and Amira Hattab began teaching, they were immediately targeted by other teachers in a similar way that Plaintiff was targeted.

75.    For example, employees of Defendant insultingly commented, "We didn't have problems until people of color joined."

76.    In or around October 2024, Plaintiff presented at the Courageous Conversations Summit.

77.    Nicole Coover-Thompson, the school librarian, attended the summit.

78.    After the summit, Nicole Coover-Thompson falsely peddled a defamatory rumor that Plaintiff had made antisemitic comments during the summit.

79.    Following Nicole Coover-Thompson's false accusation against Plaintiff, Defendant launched a discriminatory investigation against Plaintiff led by Assistant Superintendent of Human Resources, George Dagres, and including Assistant Principal of Human Resources, Matthew Parrilli.

80.    Nicole Coover-Thompson later admitted to Defendant's Associate Principal of Teaching and Learning, Dr. Rachel Abel (who replaced Dr. Jennifer Loika), that she had lied

about Plaintiff making antisemitic comments, thereby admitting to her defamation of Plaintiff.

81.     Even after Nicole Coover-Thompson's confession that she lied about Plaintiff making antisemitic comments, Defendant forced Plaintiff to continue to endure the discriminatory investigation into defamatory claims Defendant knew to be false, which lasted three-months.

82.     Throughout this period, Plaintiff was forced to continue working with Nicole Coover-Thompson, despite requesting intervention from Defendant, which went unaddressed.

83.     Furthermore, this false accusation was never corrected by the Defendant, leaving Plaintiff's reputation damaged.

84.     Individuals outside of Plaintiff's protected class or classes (non-Palestinian, non-Muslim, and non-Middle Eastern) were not subjected to the rigorous and lengthy investigation that Plaintiff was forced to endure.

85.     During a conversation related to Nicole Coover-Thompson's defamation of Plaintiff, Plaintiff said to Dr. Eileen McMahon that she was not antisemitic and that Plaintiff was tired of defending herself against a baseless accusation made on the basis of her identity.

86.     In response, Dr. Eileen McMahon stated, "I know you are not antisemitic. If I thought you were, you would not be here."

87.     The interaction suggests that, despite Defendant's administration having knowledge that Plaintiff was not antisemitic, Defendant continued to subject Plaintiff to baseless investigations and invasive, unfair scrutiny.

88.     In or around August 2024, Plaintiff requested and began taking intermittent FMLA to attend to her sick father, who suffered from cancer.

89.     Despite her father being critically ill and her FMLA leave being approved, Plaintiff

was punished by Defendant's administration for not working while on FMLA leave.

90. On one occasion, because Plaintiff was utilizing FMLA leave, she did not approve a request made by a teacher that was submitted while Plaintiff was on FMLA leave.

91. Defendant reprimanded Plaintiff for not approving the teacher's request while she was on FMLA leave, thereby interfering with Plaintiff's use of FMLA benefits and retaliating against her for her use of FMLA benefits.

92. By requiring Plaintiff to be responsive and ultimately to work while on approved FMLA leave, Defendant interfered with Plaintiff's FMLA rights.

93. By reprimanding Plaintiff for not working while on approved FMLA leave, Defendant retaliated against Plaintiff for her exercise of her rights under FMLA.

94. In response to Plaintiff being reprimanded, Plaintiff, on three separate occasions, requested from Defendant an explanation of what her obligations were while on FMLA leave.

95. In response, Defendant did not provide Plaintiff any parameters, leaving Plaintiff vulnerable to further reprimand and discriminatory treatment.

96. Defendant's refusal to clarify expectations while Plaintiff was on FMLA leave led Plaintiff to feel pressured to work at all hours of the night in order to keep up with Defendant's unfair expectations.

97. Therefore, Defendant further interfered with Plaintiff's FMLA rights and retaliated against Plaintiff for her use of FMLA benefits by refusing to engage her requests, which pressured Plaintiff to work all hours of the night while on FMLA leave in order to avoid further retaliation by Defendant.

98. On November 14, 2024, a white sophomore student insultingly degraded Amira Hattab, a Middle Eastern and Muslim teacher, with the discriminatory insult of "terrorist bitch."

99. The same student continued on to threaten Amira Hattab with, "I am going to kill you."

100. Despite the gravity of this threat, Defendant allowed the student to return to her class, exhibiting a complete lack of disregard for safety of a Middle Eastern and Muslim teacher, which perpetuated a hostile environment against all Middle Eastern and Muslim teachers of Defendant, including Plaintiff.

101. When Plaintiff raised concerns about the safety of a fellow Middle Eastern and Muslim teacher, Plaintiff was criticized and told she was being "too intense."

102. By contrast, a vague and indirect rumor of a school shooting rumor in May 2023 resulted in an immediate lockdown and chaos, sending a clear message that threats against Middle Eastern and Muslim teachers were not regarded as warranting the same chaos and threat protocol as threats against others outside of Plaintiff's protected classes.

103. In or around December 2024, the Chicago Jewish Alliance (CJA) publicly doxed Plaintiff and falsely labeled Plaintiff as antisemitic based on her protected classes.

104. On or about January 6, 2025, the defamatory claims peddled by CJA were publicly amplified at a board meeting of Defendant, despite Defendant previously undertaking numerous actions and investigations into Plaintiff for false accusations of antisemitism and finding no evidence of the same.

105. At Defendant's board meeting, public comments were again made falsely labeling Plaintiff as antisemitic, which damaged Plaintiff's professional reputation.

106. The next day, Dr. Eileen McMahon summoned Plaintiff into a meeting and issued Plaintiff negative performance feedback, despite Plaintiff no corrective action ever being taken against Plaintiff, despite Plaintiff only ever receiving positive feedback in her role, and despite

Plaintiff excelling in her role.

107. Plaintiff, worried for her job and feeling threatened by Defendant's retaliatory conduct, inquired if her job was in jeopardy.

108. When Plaintiff asked if her job was in jeopardy, Dr. Eileen McMahon said, "I have a decision to make, but I don't think you are a fit here."

109. At the time of her hire, Plaintiff informed Defendant that she engaged public speaking opportunities and owned a consulting agency, which Defendant agreed Plaintiff could continue during her employment with Defendant.

110. After Plaintiff was falsely accused yet again of antisemitism in Defendant's board meeting on or about January 6, 2025, and after Dr. Eileen McMahon issued Plaintiff retaliatory negative performance feedback, Defendant denied Plaintiff every public speaking opportunity Plaintiff had previously been allowed, even though Plaintiff's advocacy had been approved as part of her role.

111. In or around February 2025, Plaintiff applied for the Associate Principal for Teaching and Learning position at Maine East High School.

112. Plaintiff was the only applicant with a doctorate degree and a resume filled with relevant accomplishments and awards, indicating that Plaintiff was highly qualified for the role.

113. Still, Plaintiff was not selected for the role, and a less qualified individual was selected.

114. The hiring panel included individuals involved in previous biased investigations and decisions against Plaintiff, including George Dagres and Dr. Rachel Abel, therefore placing Plaintiff in the position of being discriminated against on the basis of her protected classes by individuals who already exhibited a history of discriminatory conduct against Plaintiff.

14

115. That same month, Plaintiff notified Defendant's Superintendent Dr. Tatiana Bonuma of her intent to file a grievance – effectively engaging in protected activity.

116. Dr. Tatiana Bonuma acknowledged Plaintiff's right to do so but called it the "end of the road," in effect threatening Plaintiff's employment with Defendant if Plaintiff engaged in protected activity by filing a grievance.

117. Just one week later, Plaintiff was formally and unjustly reprimanded for the first time by George Dagres.

118. George Dagres placed a letter in Plaintiff's file after Plaintiff sought support from her fellow coworkers in response to CJA's defamatory attacks that refueled false accusations against Plaintiff of antisemitism in the school board meeting.

119. Dr. Eileen McMahon contributed to this discriminatory disciplinary action by launching an investigation into Plaintiff for seeking her coworkers' support in response to her defamation — one in which she interrogated Plaintiff's coworkers and reiterated the defamatory accusations of antisemitism against Plaintiff.

120. Multiple witnesses who Dr. Eileen McMahon interrogated in relation to her discriminatory investigation informed Plaintiff that Dr. Eileen McMahon misrepresented their statements.

121. In or around April 2025, Plaintiff engaged in protected activity by raising concerns about how Palestinian students were treated during a school cultural assembly.

122. Defendant instructed Palestinian performers that they could only use instrumental music, censored the lyrics in the students' music, and did not introduce the performers in the same manner other performers were introduced.

123. No non-Palestinian performer was restricted to just instrumental music, had the

lyrics of their music censored, or were improperly introduced.

124. Defendant's discriminatory treatment against the Palestinian performers fueled a hostile environment against Palestinians, including Plaintiff.

125. Plaintiff raised concerns with Defendant about the discriminatory treatment against the Palestinian performers, thereby engaging in protected activity.

126. In response to Plaintiff's concern, Defendant brushed Plaintiff off and censored her as an administrator herself, despite the fact that she was well-positioned to advocate for the Palestinian students as a member of Defendant's leadership.

127. Defendant observed each cultural heritage month by representing elements of the respective culture throughout the respective month, such as by showcasing elements of Hispanic culture throughout Hispanic Heritage Month.

128. Defendant failed to observe Arab Heritage Month, which fell in April 2025.

129. On or about April 10, 2025, Plaintiff emailed Defendant's administration regarding the complete failure to observe Arab Heritage Month, which Plaintiff viewed as another form of discrimination against and the erasure of the Middle Eastern identity.

130. Following her continued engagement in protected activity, Plaintiff's curriculum contributions—especially the inclusion of Palestinian voices—became a source of controversy, despite the fact that Plaintiff was hired on to revamp Defendant's English curriculum and despite the fact that her curriculum contributions had previously received stellar feedback, including that, "she has pioneered remarkable changes in [Defendant's] approach to teaching and learning and has helped her team to build the bridge between what has always been and what is to come."

131. Plaintiff revamped Defendant's curriculum by diversifying the curriculum material to incorporate texts about marginalized groups, including texts about relating to Native

Americans, immigrants, LGBTQIA+ individuals, and women.

132.  Plaintiff's incorporations of texts relating to Palestine were attacked and falsely deemed as not being pre-approved by Defendant in an effort to remove the Palestine texts from the curriculum, despite Plaintiff receiving pre-approval for the texts.

133.  On or about April 21, 2025, Plaintiff wrote to Defendant's Director of Adult Learning, Dr. Jill Geocaris, expressing concern that Plaintiff's work, especially her curriculum relating to Palestine, was being mischaracterized, thereby engaging in protected activity.

134.  Dr. Jill Geocaris failed to engage Plaintiff's concerns of discriminatory conduct, thereby allowing the hostile environment Plaintiff suffered from to continue to manifest against her.

135.  Plaintiff was punished for doing exactly what she was hired to do – make departmental changes by the direction of Dr. Eileen McMahon.

136.  Throughout this time, Plaintiff was isolated and excluded by Defendant.

137.  Security guards in school buildings routinely asked Plaintiff for identification while her coworkers outside of her protected classes walked in freely in yet another display of Plaintiff being treated differently than those outside her protected classes (non-Palestinian, non-Muslim, and non-Arab).

138.  As Plaintiff was a visibly Middle Eastern Palestinian Muslim woman who wears a hijab, Plaintiff felt singled out and subjected to discriminatory and differential treatment on the basis of her protected classes.

139.  Plaintiff reported this differential treatment to Defendant several times, thereby engaging in protected activity.

140.  Defendant failed to engage Plaintiff's reports, thereby allowing a hostile

environment to continue against her.

141. Plaintiff was denied Eid as a religious holiday until Plaintiff advocated extensively to be allowed to observe her religious holiday.

142. Similarly-situated individuals outside of Plaintiff's protected classes did not have to advocate extensively to be allowed to observe their religious holidays.

143. Staff member, Tony Tavano, told Plaintiff directly that they "needed to protect their colleagues" from her.

144. Further, Nicole Avadek told Plaintiff she liked Plaintiff's leadership but not what she "stood for."

145. Despite trying to address these issues internally and maintain professionalism, Plaintiff was met with repeated retaliation, escalating hostility, and an environment where Plaintiff's protected classes were treated as a threat to others.

146. On or about April 9, 2025, Dr. Tatiana Bonuma and George Dagres called a meeting with Plaintiff via a virtual Zoom meeting while Plaintiff was in the hospital attending to her sick daughter.

147. During this meeting, Dr. Tatiana Bonuma and George Dagres informed Plaintiff that her contract would not be renewed, effectively terminating her.

148. Plaintiff was given a false choice: resign or face public termination.

149. Due to the damage Plaintiff's career stood to suffer from a public termination, Plaintiff was forced to resign, although she did so under protest of the false choice presented as a pretext to her unlawful termination.

150. On or about April 11, 2025, Plaintiff submitted her letter of forced resignation under protest, citing Defendant's sustained inaction and discriminatory treatment against her and

identifying her resignation as forced in lieu of facing a public termination.

151.   On or about April 22, 2025, Plaintiff received confirmation that Defendant's Board of Education had accepted her resignation.

152.   Plaintiff's resignation was not voluntary, and was effectively a termination.

153.   Plaintiff completed the term of the school year, suffering new incidents of discrimination, harassment, and retaliation based on her protected classes on a weekly basis.

154.   After Plaintiff was effectively terminated, she continued to suffer discrimination, harassment, and retaliation based on her protected classes.

155.   On or about May 3, 2025, Plaintiff requested a professional day to complete her National Board Certification (NBCT), but Plaintiff's request was denied without explanation.

156.   Other, similarly-situated individuals outside of Plaintiff's protected classes were not denied professional days to complete NBCT certifications.

157.   On or about May 6, 2025, Plaintiff emailed District Administration regarding the ongoing pattern of humiliation and hostile behavior Plaintiff was experiencing in the workplace, thereby engaging in protected activity.

158.   On or about May 8 or May 10, 2025, Plaintiff met separately with George Dagres and Dr. Tatiana Bonuma for approximately one hour each regarding the discriminatory treatment she suffered, thereby engaging in protected activity.

159.   Despite these meetings, Defendant failed to take action to address Plaintiff's concerns of discrimination, harassment, and retaliation, thereby allowing the severe and pervasive hostile work environment to persist against Plaintiff.

160.   For example, Teachers of Defendant continued to isolate Plaintiff and ignore her at work.

161.     Additionally, Dr. Eileen McMahon spoke negatively about Plaintiff to both department chairs and members of her own department and spread incorrect allegations about Plaintiff, thereby continuing the defamation of Plaintiff that she suffered throughout her employment with Defendant.

162.     Plaintiff maintained an email correspondence with George Dagres during this time, where Plaintiff continued to provide relevant documentation and updates about the discriminatory and harassing conduct she suffered, thereby engaging in protected activity.

163.     On or about May 14, 2025, Dr. Eileen McMahon refused to sign the required documentation for Plaintiff's NBCT recertification – actively preventing Plaintiff from completing necessary certification for her field.

164.     Plaintiff escalated the issue to George, who ultimately signed the paperwork on Dr. Eileen McMahon's behalf.

165.     Other, similarly-situated employees of Defendant outside of Plaintiff's protected classes were not refused signature on required documentation as Plaintiff was by Dr. Eileen McMahon.

166.     On or about May 17, 2025, Nicole Avadek grabbed Plaintiff's arm, escalating her harassment of Plaintiff to physical assault, and threateningly demanded from Plaintiff, "You should say hi."

167.     Plaintiff released herself from Nicole Avadek's grip and continued walking so as not to cause a scene before students who were present and watching the interaction.

168.     In response to Plaintiff's calm reaction, Nicole Avadek verbally assaulted Plaintiff by yelling, "I was nothing but nice and you know that."

169.     Plaintiff reported this physical assault by Nicole Avadek to Defendant, including

George Dagres, thereby engaging in protected activity.

170.    George Dagres confirmed the physical assault was captured by security footage, which confirmed Plaintiff's account.

171.    Still, like Plaintiff's prior reports, Defendant took no remedial action or corrective measures following Plaintiff's complaint, thereby allowing the severe and pervasive hostile work environment to persist against Plaintiff.

172.    Instead of addressing Plaintiff's complaint, George instructed Plaintiff that she could work from home the remainder of the school year, despite Plaintiff being the victim and not the aggressor of the verbal and physical assault.

173.    Due to Defendant's refusal to address the severe and pervasive discrimination, harassment, retaliation, and hostile work environment Plaintiff suffered, Plaintiff was forced to complete a portion of her job duties remotely, but insisted on completing other job duties in-person so as prioritize her students' needs.

174.    On or about May 18, 2025, in Plaintiff's capacity as a Department Chair and following the recommendation of Dr. Rachel Abel, Plaintiff submitted a formal request to place letters in the personnel files of Todd Tuder and Tony Tavano based on their discrimination and harassment against her.

175.    George Dagres approved this request via email.

176.    However, Plaintiff received no further support or follow-up to this request, which Defendant effectively denied through its inaction, thereby undermining Plaintiff's authority as Department Chair - a pattern that had repeated itself throughout her employment with Defendant.

177.    On or about June 3, 2025, following Plaintiff's assumption of partial job duties remotely, Dr. Eileen McMahon sent an inappropriate email to Plaintiff's team instructing them to

"check out with any friendly administrator" since Plaintiff would not be in the building – in effect, falsely framing Plaintiff as unfriendly.

178.    Dr. Eileen McMahon had not previously sent such a message, and sent this message for the first time after Plaintiff's assumption of job duties remotely.

179.    Plaintiff shared the message with George Dagres, who informed Plaintiff he addressed the email with Dr. Eileen McMahon via text message.

180.    This was one of many instances where Dr. Eileen McMahon publicly belittled Plaintiff and actively undermined her leadership role.

181.    During Plaintiff's employment with Defendant, Dr. Eileen McMahon  et with the individuals Plaintiff oversaw and undermined Plaintiff's authority, including but not limited to by falsely representing that Plaintiff was making too many changes despite Plaintiff having directives from Dr. Eileen McMahon about implementing changes.

182.    This created tensions between Plaintiff and her team as Dr. Eileen McMahon represented to Plaintiff's team that Plaintiff was not accurately performing her job.

183.    On one occasion, Dr. Eileen McMahon stated to Plaintiff, "I'm not going to believe the shit I hear about you if you don't believe the shit you hear about me," implying that defamatory and false statements about Plaintiff existed.

184.    Additionally, when hiring Plaintiff's replacement, Dr. Eileen McMahon informed employees of Defendant that she was "going to get it right this time," implying that Plaintiff was not fit for the role, despite Plaintiff's overwhelmingly positive feedback that described her as exceeding expectations.

185.    Since her employment with Defendant, Plaintiff has applied for over 61 positions, and has found no success in attaining a similar position as she worked with Defendant.

186.     However, Defendant's discrimination, harassment, and retaliation, against Plaintiff, in addition to Defendant's defamation of Plaintiff, have severely limited Plaintiff's employment opportunities, severely limited the speaking opportunities she has been offered, and diminished business to her consulting agency.

187.     Plaintiff's professional career, as a whole, has suffered extensively as a result of Defendant's defamation of Plaintiff.

188.     For example, Dr. Tatiana Bonuma had a conversation with Nick Pollyack, a superintendent at East Leyden High School where Plaintiff applied to be an Assistant Principal following her termination from Defendant, that resulted in Plaintiff not being selected for the position.

189.     Plaintiff was previously employed at East Leyden High School, and upon her voluntary separation to accept employment with Defendant, administrators at East Leyden High School informed Plaintiff that she would be welcomed back to work at East Leyden High School in the future.

190.     After Defendant's termination of Plaintiff, Plaintiff was unable to attain employment with East Leyden High School, despite her previous voluntary separation on positive terms with East Leyden High School, and East Leyden High School's assertion upon Plaintiff's voluntary and amicable separation that she would be welcomed back in the future.

191.     At the time Plaintiff was hired to work for Defendant, her career was on an upward trajectory, as she was an award-winning teacher, had decades of successful work experience, spoke nationwide and globally about her teaching methods and style, consistently met and performance expectations, and was highly sought after for her contributions to the field.

192.     After Plaintiff's employment with Defendant, the upward trajectory of her career

was severely diminished, with Plaintiff unable to attain comparable employment despite submitting countless applications and despite being highly qualified for the positions she applied for.

193. After her termination, Plaintiff continued to report the hostile, discriminatory, harassing, and retaliatory treatment against her to Defendant, thereby engaging in protected activity.

194. The continued discrimination, harassment, retaliation, and hostile environment Defendant subjected Plaintiff to became so severe that Plaintiff had no choice but to complete her job duties remotely through the end of the school year.

195. Even throughout the severe discrimination, harassment, retaliation, and hostile environment Plaintiff suffered, which forced her to complete her job duties remotely, Plaintiff continued to meet and exceed Defendant's performance expectations.

196. The frequency of discriminatory behavior that Plaintiff was forced to endure created a severe and pervasive work environment that rose to the level of a hostile work environment.

197. Plaintiff opposed the hostile work environment she was subjected to because she believed in justice, equity, and the safety of all students and staff—especially those from marginalized communities.

198. For that, Plaintiff was silenced, punished, and ultimately unlawfully terminated.

199. The cumulative actions of Defendant, including but not limited to Dr. Eileen McMahon, Defendant's administrators, and Defendant's teachers, created a discriminatory, retaliatory, and hostile work environment based on Plaintiff's protected classes.

200. On or about April 11, 2025, Plaintiff was unlawfully terminated because of her

24

national origin (Palestinian), race (Middle Eastern), religion (Islam), sex (female), familial responsibilities (mother), marital status (single), and use of FMLA benefits.

201. Plaintiff was retaliated against, and her employment was ultimately terminated for opposing unlawful discrimination and for exercising her protected rights.

202. Plaintiff reported the discrimination and harassment she suffered due to her protected classes to Defendant.

203. Plaintiff was targeted for adverse employment action because of her race, national origin, religion, sex, familial responsibilities, marital status, and use of FMLA benefits.

204. Plaintiff suffered multiple adverse employment actions including but not limited to being refused agreed-upon public speaking opportunities, failure to be promoted, and ultimately, unlawful termination.

205. There is a basis for employer liability for the race, religion, national origin, sex, familial responsibilities, and marital status-based harassment, and FMLA interference and retaliation that Plaintiff was subjected to.

206. Plaintiff can show that she engaged in statutorily protected activity – a necessary component of her retaliation claim – because Plaintiff lodged several complaints to Defendant on several occasions.

### COUNT I
### Violation of 42 U.S.C. §1981
### (Race-Based Discrimination)

207. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

208. Section 1977 of the Revised Statutes, 42 U.S.C. §1981, as amended, guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the

making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

209.   Defendant's conduct against Plaintiff's race amounts to a pattern or practice of systemic race discrimination that constitutes illegal, intentional race discrimination in violation of 42 U.S.C. §1981.

210.   Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

211.   Defendant's unlawful conduct resulted in considerable harm and adverse employment action to Plaintiff and Plaintiff is therefore entitled to all legal and equitable remedies under §1981.

212.   As a direct and proximate result of the race-based discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Discrimination)

213.   Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

214.   By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

215.   Plaintiff is a member of a protected class under Title VII, due to Plaintiff's race.

216.   Plaintiff met or exceeded performance expectations.

217.   Plaintiff was treated less favorably than similarly situated employees outside of

Plaintiff's protected class.

218.    Defendant terminated Plaintiff's employment on the basis of Plaintiff's race, Middle Eastern.

219.    Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

220.    As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

<u>**COUNT III**</u><br>
**Violation of Title VII of the Civil Rights Act of 1964**<br>
**(National Origin-Based Discrimination)**

221.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

222.    By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

223.    Plaintiff is a member of a protected class under Title VII, due to Plaintiff's national origin, Palestinian.

224.    Plaintiff met or exceeded performance expectations.

225.    Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

226.    Defendant terminated Plaintiff's employment on the basis of Plaintiff's national origin.

227.    Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

228.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT IV**
**Violations of Title VII of the Civil Rights Act of 1964**
**(Religion-Based Discrimination)**

229.   Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

230.   By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's religion, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

231.   Plaintiff met or exceeded performance expectations.

232.   Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

233.   Defendant terminated Plaintiff's employment on the basis of Plaintiff's religion, Islam.

234.   Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's religion, Islam.

235.   As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT V**
**Violation of Title VII of the Civil Rights Act of 1964**
**(Sex-Based Discrimination)**

236. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

237. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based of Plaintiff's sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

238. Plaintiff met or exceeded performance expectations.

239. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

240. Defendant terminated Plaintiff's employment on the basis of Plaintiff's sex.

241. Plaintiff is a member of a protected class under Title VII due to Plaintiff's sex.

242. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

243. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT VI
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Harassment)

244. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

245. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to race-based harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

246. Defendant knew or should have known of the harassment.

247. The race-based harassment was severe or pervasive.

248. The race-based harassment was offensive subjectively and objectively.

249.    The race-based harassment was unwelcomed.

250.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* due to Plaintiff's race, Middle Eastern.

251.    Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

252.    As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

<u>**COUNT VII**</u>
**Violation of Title VII of the Civil Rights Act of 1964**
**(National Origin-Based Harassment)**

253.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

254.    By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to national origin-based harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

255.    Defendant knew or should have known of the harassment.

256.    The national origin-based harassment was severe or pervasive.

257.    The national origin-based harassment was offensive subjectively and objectively.

258.    The national origin-based harassment was unwelcomed.

259.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* due to Plaintiff's national origin, Palestinian.

260.    Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

261.    As a direct and proximate result of the national origin-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of

other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT VIII
### Violation of Title VII of the Civil Rights Act of 1964
### (Religion-Based Harassment)

262. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

263. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to religion-based harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

264. Defendant knew or should have known of the harassment.

265. The religion-based harassment was severe or perversive.

266. The religion-based harassment was offensive subjectively and objectively.

267. The religion-based harassment was unwelcome.

268. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*. due to Plaintiff's religion, Islam.

269. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

270. As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IX
### Violation of Title VII of the Civil Rights Act
### (Sex-Based Harassment)

271. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

272. By virtue of the conduct alleged herein, Defendant engaged in unlawful

employment practices and subjected Plaintiff to sex-based harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

273.  Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, due to Plaintiff's sex, female.

274.  Defendant knew or should have known of the harassment.

275.  The sex-based harassment was severe or pervasive.

276.  The sex-based harassment was offensive subjectively and objectively.

277.  The sex-based harassment was unwelcomed.

278.  Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

279.  As a direct and proximate result of the sex-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life

## COUNT X
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Retaliation)

280.  Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

281.  Plaintiff is a member of a protected class under 42 U.S.C. §2000e, *et seq.*

282.  During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted race discrimination and/or race-based harassment.

283.  As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

284.  In response to Plaintiff's complaint, Defendant failed to conduct a prompt,

thorough, and objective investigation of Plaintiff's complaint of race discrimination or harassment.

285.   Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

286.   Plaintiff's suffered adverse employment action in retaliation for engaging in protected activity.

287.   By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the race-based discrimination or harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

288.   Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

289.   As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

### COUNT XI
### Violation of Title VII of the Civil Rights Act of 1964
### (National Origin-Based Retaliation)

290.      Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

291.      Plaintiff is a member of a protected class under 42 U.S.C. §2000e, *et seq.*

292.      During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted national origin-based discrimination and/or national origin-based harassment.

293.      As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§2000e, *et seq.*

294.     In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of national origin discrimination or harassment.

295.     Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

296.     Plaintiff's suffered adverse employment action in retaliation for engaging in protected activity.

297.     By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the national origin-based discrimination or harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

298.     Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

299.     As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## <u>COUNT XII</u>
### Violation of Title VII of the Civil Rights Act of 1964
### (Religion-Based Retaliation)

300.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

301.     Plaintiff is a member of a protected class under 42 U.S.C. §2000e, *et seq.*

302.     During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted religious-based discrimination and/or religious-based harassment.

303.     As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

304.     In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of religious discrimination or harassment.

305.     Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

306.     Plaintiff's suffered adverse employment action in retaliation for engaging in protected activity.

307.     By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the religious-based discrimination or harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

308.     Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

309.     As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## COUNT XIII
### Violation of Title VII of the Civil Rights Act
### (Sex-Based Retaliation)

310.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

311.     Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

312.     During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about sex-based harassment and/or sex-based discrimination.

313.     As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

314.     In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of sex-based harassment and/or sex-based discrimination.

315.     Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and/or harassing conduct complained of by Plaintiff.

316.     Plaintiff suffered an adverse employment action in retaliation for engaging in a protected activity.

317.     By virtue of the foregoing, Defendant retaliated against Plaintiff based on reporting the sex-based harassment and/or sex-based discrimination thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

318.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

319.     As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT XIV
### Violation of Title VII of the Civil Rights Act of 1964
### (Failure to Accommodate Religious Belief or Practice)

320.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

321.     Title VII requires an employer to reasonably accommodate an employee's religious beliefs or practices, unless doing so would cause an undue burden on the employer.

322.     Plaintiff holds a sincere religious belief (observing Eid holiday) and requested accommodation to practice her religion.

323.     Defendant was aware of the religious practice and the need for accommodations.

324.     Defendant failed to engage in an interactive process to determine the appropriate accommodations after Plaintiff requested a reasonable accommodation.

325.     The religion-based accommodation that Plaintiff requested was objectively reasonable and did not place an undue burden on Defendant.

326.     Instead of taking steps to accommodate Plaintiff's request to observe her religious holiday, Defendant terminated Plaintiff on the basis of her religion and religious practices.

327.     Accordingly, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's sincerely held religious beliefs or practices in violation of Title VII.

328.     As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

## COUNT XV
### Violation of the Illinois Human Rights Act (775 ILCS 5/)
### (Race-Based Discrimination)

329.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

330.     By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's race, in violation of the Illinois Human Rights Act, (775 ILCS 5/) ("IHRA").

331.     Plaintiff met or exceeded performance expectations.

332.     Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

37

333. Defendant terminated Plaintiff's employment on the basis of Plaintiff's race, Middle Eastern.

334. Plaintiff is a member of a protected class under the IHRA due to Plaintiff's race.

335. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

336. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

<u>**COUNT XVI**</u>
**Violation of the Illinois Human Rights Act, (775 ILCS 5/)**
**(Race-Based Harassment)**

337. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

338. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to race-based harassment, in violation of the Illinois Human Rights Act (775 ILCS 5/).

339. Defendant knew or should have known of the harassment.

340. The race-based harassment was severe or pervasive.

341. The race-based harassment was offensive subjectively and objectively.

342. The race-based harassment was unwelcomed.

343. Plaintiff is a member of a protected class under the Illinois Human Rights Act (775 ILCS 5/) due to Plaintiff's race, Middle Eastern.

344. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

345. As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other

employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT XVII
### Violation of the Illinois Human Rights Act (775 ILCS 5/)
### (Race-Based Retaliation)

346.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

347.    Plaintiff is a member of a protected class under (775 ILCS 5/) on the basis of race.

348.    During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted race-based discrimination and/or harassment.

349.    As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Illinois Human Rights Act (775 ILCS 5/).

350.    In response to Plaintiff's complaints, Defendant failed numerous times to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of race-based discrimination and/or harassment.

351.    Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

352.    Plaintiff has suffered adverse employment action in retaliation for engaging in protected activity.

353.    By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting of race-based discrimination and/or harassment, thereby violating the Illinois Human Rights Act (775 ILCS 5/).

354.    Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of the IHRA.

355.    As a direct and proximate result of the above-alleged willful and/or reckless act of

39

Defendant, Plaintiff has suffered of a pecuniary and non-pecuniary nature, humiliation, and degradation, including mental anguish, distress humiliation, and loss of enjoyment of life.

### COUNT XVIII
### Violation of the Illinois Human Rights Act (775 ILCS 5/)
### (National Origin-Based Discrimination)

356.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

357.     By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's national origin, in violation of the Illinois Human Rights Act, (775 ILCS 5/) ("IHRA").

358.     Plaintiff met or exceeded performance expectations.

359.     Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

360.     Defendant constructively discharged Plaintiff's employment on the basis of Plaintiff's national origin.

361.     Plaintiff is a member of a protected class under the IHRA due to Plaintiff's national origin, Palestinian.

362.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

363.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT XIX
### Violation of the Illinois Human Rights Act, (775 ILCS 5/)
### (National Origin-Based Harassment)

364.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

365.     By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to national origin-based harassment, in violation of the Illinois Human Rights Act (775 ILCS 5/).

366.     Defendant knew or should have known of the harassment.

367.     The national origin-based harassment was severe or pervasive.

368.     The national origin-based harassment was offensive subjectively and objectively.

369.     The national origin-based harassment was unwelcomed.

370.     Plaintiff is a member of a protected class under the Illinois Human Rights Act (775 ILCS 5/) due to Plaintiff's national origin, Palestinian.

371.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

372.     As a direct and proximate result of the national origin-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT XX
**Violation of the Illinois Human Rights Act (775 ILCS 5/)**
**(National Origin-Based Retaliation)**

373.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

374.     Plaintiff is a member of a protected class under (775 ILCS 5/) on the basis of national origin.

375.     During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted national origin-based discrimination and/or harassment.

376.     As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Illinois Human Rights Act (775 ILCS 5/).

377.     In response to Plaintiff's complaints, Defendant failed numerous times to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of national origin-based discrimination and/or harassment.

378.     Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

379.     Plaintiff has suffered adverse employment action in retaliation for engaging in protected activity.

380.     By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting of national origin-based discrimination and/or harassment, thereby violating the Illinois Human Rights Act (775 ILCS 5/).

381.     Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of the IHRA.

382.     As a direct and proximate result of the above-alleged willful and/or reckless act of Defendant, Plaintiff has suffered of a pecuniary and non-pecuniary nature, humiliation, and degradation, including mental anguish, distress humiliation, and loss of enjoyment of life.

### COUNT XXI
#### Violation of the Illinois Human Rights Act (775 ILCS 5/)
#### (Religion-Based Discrimination)

383.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

384.     By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's religion, in violation of the Illinois Human Rights Act, (775 ILCS 5/) ("IHRA").

385.     Plaintiff met or exceeded performance expectations.

386.     Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

387.     Defendant terminated Plaintiff's employment on the basis of Plaintiff's religion, Islam.

388.     Plaintiff is a member of a protected class under the IHRA due to Plaintiff's religion.

389.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

390.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT XXII
**Violation of the Illinois Human Rights Act (775 ILCS 5/)**
**(Religion-Based Harassment)**

391.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

392.     By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to religion-based harassment, in violation of the Illinois Human Rights Act (775 ILCS 5/).

393.     Defendant knew or should have known of the harassment.

394.     The religion-based harassment was severe or perversive.

395.     The religion-based harassment was offensive subjectively and objectively.

396.     The religion-based harassment was unwelcome.

397.     Plaintiff is a member of a protected class under the Illinois Human Rights Act (775 ILCS 5/) due to Plaintiff's religion, Islam.

398.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

399.     As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other

employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT XXIII**
**Violation of the Illinois Human Rights Act (775 ILCS 5/)**
**(Religion-Based Retaliation)**

400.  Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

401.  Plaintiff engaged in protected activity.

402.  During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted religion-based discrimination or religion-based harassment.

403.  As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Illinois Human Rights Act (775 ILCS 5).

404.  In response to Plaintiff's protected activity, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of religion discrimination or harassment.

405.  Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

406.  Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

407.  By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the religion-based discrimination or harassment, thereby violating Illinois Human Rights Act (775 ILCS 5).

408.  Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of the IHRA.

409.     As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

### COUNT XXIV
**Violation of the Illinois Human Rights Act (775 ILCS 5/)**
**(Failure to Accommodate Religious Belief or Practice)**

410.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

411.     The IHRA requires an employer to reasonably accommodate an employee's religious beliefs or practices, unless doing so would cause an undue burden on the employer.

412.     Plaintiff holds a sincere religious belief (observing Eid holiday) and requested accommodation to practice her religion.

413.     Defendant was aware of the religious practice and the need for accommodations.

414.     Defendant failed to engage in an interactive process to determine the appropriate accommodations after Plaintiff requested a reasonable accommodation.

415.     The religion-based accommodation that Plaintiff requested was objectively reasonable and did not place an undue burden on Defendant.

416.     Instead of taking steps to accommodate Plaintiff's request to observe her religious holiday, Defendant terminated Plaintiff on the basis of her religion and religious practices.

417.     Accordingly, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's sincerely held religious beliefs or practices in violation of the IHRA.

418.     As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

### COUNT XXV
**Violation of the Illinois Human Rights Act (775 ILCS 5/)**
**(Sex-Based Discrimination)**

419.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

420.     By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's sex, in violation of the Illinois Human Rights Act, (775 ILCS 5/) ("IHRA").

421.     Plaintiff met or exceeded performance expectations.

422.     Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

423.     Defendant terminated Plaintiff's employment on the basis of Plaintiff's sex, female.

424.     Plaintiff is a member of a protected class under the IHRA due to Plaintiff's sex.

425.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

426.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

<u>**COUNT XXVI**</u>
**Violation of the Illinois Human Rights Act (775 ILCS 5/)**
**(Sex-Based Harassment)**

427.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

428.     By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to sex-based harassment, in violation of the Illinois Human Rights Act (775 ILCS 5/).

429.     Defendant knew or should have known of the harassment.

430.     The sex -based harassment was severe or perversive.

431.     The sex -based harassment was offensive subjectively and objectively.

432.     The sex -based harassment was unwelcome.

433.     Plaintiff is a member of a protected class under the Illinois Human Rights Act (775 ILCS 5/) due to Plaintiff's sex, female.

434.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

435.     As a direct and proximate result of the sex-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT XXVII
### Violation of the Illinois Human Rights Act (775 ILCS 5/)
### (Sex-Based Retaliation)

436.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

437.     Plaintiff engaged in protected activity.

438.     During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted sex-based discrimination or sex-based harassment.

439.     As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Illinois Human Rights Act (775 ILCS 5).

440.     In response to Plaintiff's protected activity, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of sex discrimination or harassment.

441.     Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

442.     Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

443. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the sex-based discrimination or harassment, thereby violating Illinois Human Rights Act (775 ILCS 5).

444. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of the IHRA.

445. As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## COUNT XXVIII
### Violation of the Illinois Human Rights Act (775 ILCS 5/)
### (Familial Responsibilities-Based Discrimination)

446. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

447. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's familial responsibilities, in violation of the Illinois Human Rights Act, (775 ILCS 5/) ("IHRA").

448. Plaintiff met or exceeded performance expectations.

449. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

450. Defendant terminated Plaintiff's employment on the basis of Plaintiff's familial responsibilities, as a mother.

451. Plaintiff is a member of a protected class under the IHRA due to Plaintiff's familial responsibilities.

452. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

453.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT XXIX
### Violation of the Illinois Human Rights Act (775 ILCS 5/)
### (Familial Responsibilities-Based Harassment)

454.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

455.     By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to familial responsibilities-based harassment, in violation of the Illinois Human Rights Act (775 ILCS 5/).

456.     Defendant knew or should have known of the harassment.

457.     The familial responsibilities-based harassment was severe or perversive.

458.     The familial responsibilities-based harassment was offensive subjectively and objectively.

459.     The familial responsibilities-based harassment was unwelcome.

460.     Plaintiff is a member of a protected class under the Illinois Human Rights Act (775 ILCS 5/) due to Plaintiff's familial responsibilities, as a mother.

461.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

462.     As a direct and proximate result of the familial responsibilities-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT XXX
### Violation of the Illinois Human Rights Act (775 ILCS 5/)

**(Familial Responsibilities-Based Retaliation)**

463.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

464.    Plaintiff engaged in protected activity.

465.    During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted familial responsibilities-based discrimination or familial responsibilities-based harassment.

466.    As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Illinois Human Rights Act (775 ILCS 5).

467.    In response to Plaintiff's protected activity, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of familial responsibilities discrimination or harassment.

468.    Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

469.    Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

470.    By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the familial responsibilities-based discrimination or harassment, thereby violating Illinois Human Rights Act (775 ILCS 5).

471.    Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of the IHRA.

472.    As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## COUNT XXXI
### Violation of the Illinois Human Rights Act (775 ILCS 5/)
### (Marital Status-Based Discrimination)

473. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

474. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's marital status, in violation of the Illinois Human Rights Act, (775 ILCS 5/) ("IHRA").

475. Plaintiff met or exceeded performance expectations.

476. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

477. Defendant terminated Plaintiff's employment on the basis of Plaintiff's marital status, as a single woman.

478. Plaintiff is a member of a protected class under the IHRA due to Plaintiff's marital status.

479. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

480. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT XXXII
### Violation of the Illinois Human Rights Act (775 ILCS 5/)
### (Marital Status-Based Harassment

481. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

482.     By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to marital status-based harassment, in violation of the Illinois Human Rights Act (775 ILCS 5/).

483.     Defendant knew or should have known of the harassment.

484.     The marital status-based harassment was severe or perversive.

485.     The marital status-based harassment was offensive subjectively and objectively.

486.     The marital status-based harassment was unwelcome.

487.     Plaintiff is a member of a protected class under the Illinois Human Rights Act (775 ILCS 5/) due to Plaintiff's marital status, as a single woman.

488.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

489.     As a direct and proximate result of the marital status-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT XXXIII
### Violation of the Illinois Human Rights Act (775 ILCS 5/)
### (Marital Status-Based Retaliation)

490.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

491.     Plaintiff engaged in protected activity.

492.     During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted marital status-based discrimination or marital status-based harassment.

493.     As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Illinois Human Rights Act (775 ILCS 5).

494.     In response to Plaintiff's protected activity, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of marital status discrimination or harassment.

495.     Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

496.     Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

497.     By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the marital status-based discrimination or harassment, thereby violating Illinois Human Rights Act (775 ILCS 5).

498.     Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of the IHRA.

499.     As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

### COUNT XXXIV
**Violation of the Illinois Slander and Libel Act (740 ILCS 145/0.01)**
**Defamation of Plaintiff's Character**

500.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

501.     Illinois common law recognizes a cause of action for Defamation of Character.

502.     During Plaintiff's employment with Defendant, Defendant never corrected prior public statements in which Defendant's investigations found to be false.

503.     Instead, Defendant failed to remediate the false accusations against Plaintiff leaving her character and reputation to be damaged as a result.

504.     Following Plaintiff's employment with Defendant, Plaintiff was financially impacted by Defendant's remarks and failure to correct prior false statements by other districts learning of the false accusations from Defendant's agents.

505.     By reason of Defendant's defamation, Plaintiff suffered severe harm and is entitled to all legal and equitable remedies under common law.

506.     Defendant intentionally interfered with Plaintiff's employment options, speaking engagement opportunities, and business to her consulting agency by defaming Plaintiff.

507.     As a result of said defamation, Plaintiff has suffered damages, including but not limited to loss of earnings, loss of ability to earn money, and mental anguish.  The losses have occurred in the past and will continue in the future.

## COUNT XXXV
### Wrongful Termination Against Public Policy
### (Illinois Common Law)

508.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

509.     At all times material, Plaintiff was Defendant's employee.

510.     During her employment, Plaintiff reported and objected to conduct she believed to be unlawful.

511.     Specifically, Plaintiff reported to Defendant the discrimination, harassment, retaliation, and hostile work environment to which she was subjected to at the hands of Defendant.

512.     Additionally, Plaintiff reasonably complained to Defendant about failing to be inclusive to all students by not participating in an Arab Heritage Month.

513.     Furthermore, during Plaintiff's employment, Defendant actively prevented Plaintiff from engaging in speaking opportunities, which Defendant agreed to allow Plaintiff to

undertake at the time of her hire.

514.    Plaintiff reasonably believed Defendant's conduct was unlawful.

515.    Defendant terminated Plaintiff's employment in retaliation for reporting the discriminatory conduct and for Plaintiff advocating for her rights.

516.    Defendant's retaliatory discharge of Plaintiff violates a clear mandate to protect the public from unlawful conduct, and to protect allow individuals to speak freely regarding religion, race, national origin, and protected classes.

517.    By preventing someone from engaging in public advocacy is against public policy because it restricts their First Amendment right to free speech and undermines society's interest in open debate on matters of public concern.

518.    Additionally, such restrictions silence voices needed to hold institutions accountable and to promote democratic participation.

519.    Due to Defendant's retaliation, Plaintiff has suffered and continues to suffer severe harm, including damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## COUNT XXXVI
### Violation of the Family and Medical Leave Act
### (Unlawful Interference of FMLA Rights)

520.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

521.    In or around May 2024, Plaintiff was eligible for use of FMLA benefits.

522.    At all times material, Plaintiff gave proper notice to her employer by informing them of her reason for intermittent leave.

523.    Specifically, Plaintiff needed FMLA leave to care for her father, who was ill.

524.    Defendant controlled Plaintiff's work schedule and conditions of employment.

525.    Plaintiff provided enough information for her employer to know that her potential leave may be covered by the FMLA.

526.    Despite Plaintiff's FMLA eligibility and subsequent approval, Defendant interfered with Plaintiff's FMLA rights by expecting Plaintiff to continue working while on approved leave.

527.    Additionally, Plaintiff requested on three separate occasions what her rights and obligations were while on leave, which Defendant failed to provide.

528.    When Defendant expected that Plaintiff continue to work while on approved leave, Defendant interfered with Plaintiff's rights under the FMLA.

529.    Despite Plaintiff's FMLA eligibility and approval, Defendant unlawfully interfered with Plaintiff's use of her FMLA rights.

530.    Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

531.    As a direct and proximate result of the interference described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT XXXVII**
**Violation of the Family and Medical Leave Act**
**(Unlawful Retaliation for Use of FMLA Benefits)**

532.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

533.    Defendant terminated Plaintiff after Plaintiff requested and utilized FMLA leave.

534.    Defendant terminated Plaintiff because she requested and took FMLA leave as described above.

535.    Specifically, Plaintiff requested FMLA leave in order to attend to her father, who was ill.

56

536.     Defendant intentionally engaged in unlawful employment practice in violation of the FMLA, by retaliating against Plaintiff for requesting and utilizing FMLA leave.

537.     Plaintiff's request for medical leave pursuant to the FMLA was a direct and proximate cause of Plaintiff's termination.

538.     As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

a.     Back pay with interest;

b.     Payment of interest on all back pay recoverable;

c.     Compensatory and punitive damages;

d.     Reasonable attorneys' fees and costs;

e.     Award pre-judgment interest if applicable; and

f.     Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: November 12, 2025.                    Respectfully submitted,

/s/ *Yasmeen Elagha, Esq.*_____
Yasmeen Elagha, Esq.
Mohammed O. Badwan, Esq.

SULAIMAN LAW GROUP LTD.
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331)272-1945
Fax (630) 575-8188
yelagha@atlaslawcenter.com
mbadwan@atlaslawcenter.com
*Attorneys for Plaintiff*